86                    March 11, 2015                 No. 11

## IN THE OREGON TAX COURT
## REGULAR DIVISION

### SUSTAINABLE INVESTMENTS LLC,
*Plaintiff,*

*v.*

### DEPARTMENT OF REVENUE,
*Defendant,*

*and*

### MARION COUNTY ASSESSOR,
*Defendant-Intervenor.*

(TC 5213)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to the value of residential lots in Salem, Oregon. Taxpayer argued that the effect of several negative factors on its environmentally sensitive housing development had impacted the real market value of the lots as of the assessment date. Following trial, the court found that the appraiser for Defendant-Intervenor Marion County Assessor (the county) had provided no evidence from the market data showing that potential purchasers of the lots would consider relatively small lots comparable to much larger lots in other subdivisions by reason of the existence of significant common area. Nor did the conclusion of the county's appraiser seem reasonable in the absence of such proof. That weakness in the county's appraisal was of such significance that the court found the appraisal to not be a reliable basis on which to conclude value for the lots, and accepted taxpayer's appraisal as more credible.

Trial was held on August 25, 2014, in the courtroom of the Oregon Tax Court, Salem.

Gordon R. Hanna, Garrett Hemann Robertson PC, Salem, argued the cause for Plaintiff (taxpayer).

Scott A. Norris, Marion County Legal Counsel, Salem, argued the cause for Defendant-Intervenor Marion County Assessor (the county).

Decision for Plaintiff rendered March 11, 2015.

**HENRY C. BREITHAUPT, Judge.**

### I.   INTRODUCTION

This property valuation case is before the court after trial. The year at issue is the 2012-13 year and the assessment date is January 1, 2012.

## II.   FACTS

There is no real dispute about the historical facts regarding the subject property, which may be summarized as follows. The zoning applicable to the property is "Fairview Mixed Use" (FMU).

The property at issue is comprised of 127 residential lots intended for single-family residences.

The individual lots are contained in separate tax accounts. The lots at issue were all developed as part of the Pringle Creek Community, a development that brought a new level of environmentally sensitive residential development to the market. The evidence clearly establishes that the market did not respond positively to the effort. In fact, since the completion of the development of lots in 2012 only a few have sold, with no lot sales occurring between 2009 and the assessment date in 2012.

The lack of positive response from buyers in the market appears from the record to be the result of three particular factors. First, the general size of the lots is quite small. While lot sizes offered to the market are consistent with the philosophy of the development and the zoning restrictions, the evidence shows that the buyers in the market desire fee ownership of larger lots. The existence of significant common areas and community facilities appears to have done little, if anything, to address concerns and desires of the buyers in the market with respect to lot size.

A second factor contributing to the negative response of the market is the requirement that houses on the lots in question be constructed in accordance with environmentally sensitive standards. The evidence from the trial shows that construction costs are higher, often much higher, to achieve residence sizes with such features. This reality constrains the demand by contractors who would buy the lots with a goal of completing a residence house on the lot and offering the improved lot to the public. Nor have ultimate purchasers appeared with the willingness to buy a lot and incur the costs of construction of a house meeting the required standards.

Finally, the timing of this development was such that the lots came to the market at the very same time as the city, state, and nation experienced a major set of economic shocks. The local as well as general effects of these shocks served to only magnify the downward pressure on values of the factors already discussed.

One group of lots has an additional factor providing a downward force on value. This factor is the existence of archeological restrictions affecting the lots. Those restrictions will involve the expenditure of some amount of money to assess what legal requirements exist with respect to further development.

### III.   ISSUE

The issue in this case is the impact of the market forces on the lots at issue and the fair market value of each such lot as of the assessment date.

### IV.   ANALYSIS

The problem faced by the appraisal experts who testified in this matter was to determine the effect of the negative factors discussed above on the real market value of the lots as of the assessment date.

Neither appraiser concluded that the highest and best use of the property in question was other than its current use—that is, further development through construction of houses on the finished lots. It appears that the development decisions already made and reflected in the lot configurations, streets and other features, together with existing zoning restrictions, would make abandonment of the experiment in environmentally sensitive development unfeasible.

Each appraiser employed the comparable sales approach to valuation. The appraiser for Plaintiff (taxpayer) made adjustment to sales of properties that were considered comparable except for lot size, a feature that appraiser established was important in the market. The appraiser for Defendant-Intervenor (the county) made no such adjustment. The basis for that position was that lot sizes were comparable when the significant common areas in the development were allocated to the residential lots.

The appraiser for the county provided no evidence from the market that potential purchasers of the lots would consider relatively small lots to in fact be comparable to much larger lots in other subdivisions by reason of the existence of significant common area. Nor does the conclusion of the appraiser for the county seem reasonable in the absence of such proof. This weakness in the appraisal presented by the county is of such significance that the court finds the appraisal to not be a reliable basis on which to conclude value for the lots.

As to other areas of disagreement, especially with respect to the market impact of increased building costs and the downward effect of archeological problems, the appraisal presented by taxpayer is also more credible than that presented by the county.

## V.  CONCLUSION

Accordingly, the court finds that more probably than not, the values of the lots at issue are as concluded in the appraisal presented by taxpayer. Counsel for taxpayer is directed to prepare and submit a form of judgment. Now, therefore,

IT IS THE DECISION OF THIS COURT that the real market value of each of the lots at issue is as concluded in the appraisal presented by taxpayer as of the assessment date.